Pearl v. Wellman *et al.*

FREDERIC PEARL, appellant, *v.* HIRAM B. WELLMAN *et al.* appellees.

*Appeal from Tazewell.*

A levy on execution vests in the officer making it, a special property in the goods seized, for the purpose of a sale for the benefit of the judgment creditor. By such levy, the latter acquires a perfect lien, and his right to proceed further on his judgment, by prosecuting another suit thereon, or suing out another execution, is suspended until the levy is disposed of, and so far is considered as a satisfaction of the judgment. But it is different with a mere seizure of goods on a writ of attachment. In this case, the attaching creditor merely acquires an imperfect, inchoate lien, which, when followed by a judgment, will have relation to the date of the levy.

A defendant, in order to plead successfully a seizure of his goods on attachment as a ground of defeating a suit upon a judgment rendered in such attachment, should show by his plea, that such goods are specifically bound by law for the satisfaction of that judgment and still held for that purpose, by seizure on execution or otherwise.

In an action of debt upon a judgment, among other pleas, one of payment was interposed, to which the plaintiff failed to reply: *Held,* that the defendant was entitled to a judgment on that plea.

DEBT upon a judgment recovered in the St. Louis Court of Common Pleas, in the State of Missouri, brought in the Tazewell Circuit Court by the appellees against the appellant, and heard at the April term 1846, before the Hon. Samuel H. Treat, without the intervention of a jury. A judgment was then rendered in favor of the plaintiffs for the sum of $851·55 debt, and $57·86 damages. From that judgment the defendant appealed.

The pleadings on the trial below are substantially recited in the Opinion of the Court.

*H. O. Merriman,* for the appellant.

There is no answer to the plea of *nul tiel record.* "Plaintiffs bring record," &c. is no assertion that there is such a record, nor any replication to plea of payment. There should have been a replication. Graham's Pr. 765; 1 Chitty's Pl. 619; 3 do. 1181; 6 Com. Dig. title *"Pleader,"* 378. This defect is not cured by trial and verdict. A verdict

cures irregularities, but not a want of pleading, and cannot help an immaterial issue; *a fortiori*, it cannot help where there is no issue at all. 6 Com. Dig. 141, E. 38; 1 Chitty's Pl. 713, 721, 722. There was no trial of the plea of *nul tiel record*. The objections now made to third plea are

1. That it is matter of abatement only;

2. That the plea professes to answer the whole, and in reality only answers but part of the declaration, in not saying that the property equalled in value the "debt, interest and costs;"

3. It does not show what are the laws of Missouri; and

4. It does not show a detention.

Neither of these objections are well taken.

1. It is not matter in abatement but in bar of the action. 1 Chitty's Pl. 506; 3 do. 994; *Ladd* v. *Blunt*, 4 Mass. 402; *Green* v. *Burke*, 23 Wend. 501. The plaintiff never had a cause of action on the judgment not due.

2. The plea does answer the whole declaration.

3. The laws of Missouri are not in issue. The effect of a seizure under the judgment depends upon the common law, and the plea alleges that it was a process issued in the case in which judgment sued on was recovered. It admits, and plaintiff claims jurisdiction over the case, &c. The seizure is by virtue of the writ, and the writ explains itself.

4. It shows a sufficient detention. The levy is *prima facie* a satisfaction, and if anything has destroyed the force of the levy, it should be shown by replication. *Ex parte* Lawrence, 4 Cowen, 417; 7 do. 21; *Green* v. *Burke*, 23 Wend. 501. Do the facts stated in the third plea amount to a defence? A levy under an execution upon personal property is a satisfaction to the extent of the value of the property seized. Why?

1. Because it is unknown how, for the judgment may be satisfied by sale of the property *in custodia legis;*

2. The sheriff acquires a special property in goods seized, and may maintain trespass, trover, &c. *Ladd* v. *Blunt*, 4 Mass. 402; *Bayley* v. *French*, 2 Pick. 586; *Green* v. *Burke*, 23 Wend. 499, 501; 14 do. 460; 3 Missouri, 353.

The *dictum* in *Ladd* v. *Blunt* is overruled.

Personal property seized under attachment is *in custodia legis*, subject to the judgment and the satisfaction of the debt, condemned in satisfaction by the judgment. The rights of the plaintiff and the property of the sheriff therein, after judgment at least, are the same in every respect, as if seized under execution, and the rights acquired relate back by operation of law, and the lien attaches from the date of the levy. *Watson* v. *Todd*, 5 Mass. 271; *Vinton* v. *Bradford*, Ib. 114, 116; *Ladd* v. *North*, 2 Pick. 514, 518; *Fairfield* v. *Baldwin*, 12 Pick. 388; *Brownell* v. *Manchester*, 1 do. 234; *Badlam* v. *Tucker*, Ib. 389; *The People* v. *Cameron*, 2 Gilm. 471; *Martin* v. *Dryden*, 1 do. 213.

The principle is true in whatever way the property is seized lawfully to pay debts. It extends to distress. *Green* v. *Burke*, 23 Wend. 501; Bradby on Distresses, 130; 1 Burrows, 417. There is no one principle applicable to levies under executions, that does not apply with equal force to a levy under an attachment, especially after judgment. The case in 5 Gill & Johns. 102, 109, seems to have been decided upon the principle that a suit upon the appeal bond might be prosecuted notwithstanding the levy, and regarded the conditions of the bond as forming an exception to the general rule. But a judgment cannot be sued on while the levy is pending. 23 Wend. before cited.

*T. J. Little, O. H. Browning & N. Bushnell*, for the appellees. The following written argument was filed by *N. Bushnell*:

1. The record offered in evidence was properly authenticated. *Ferguson* v. *Harwood*, 2 Peters' Cond. R. 548.

2. The record offered in evidence is not preserved in the bill of exceptions, but only the certificates authenticating it. The Court, then, have no means of determining whether the evidence did, or did not authorize the judgment rendered below. But as the record, though not preserved in the bill of exceptions, is copied into the record in this case, I will add, that although the suit in St. Louis was by

attachment, yet the defendant was in fact personally served with process, and afterwards appeared in and defended the action.   In such a case, the judgment in an attachment suit is personally binding on the defendant, and the record is conclusive evidence of the debt, in a suit upon it in another State.   *Mayhew* v. *Thatcher*, 5 Peters' Cond. R. 34.

3.   The third plea was bad, and the demurrer to it was properly sustained.   The plea is a special plea of payment. The payment is made to consist in the fact, that property "worth the full amount" of the debt mentioned in the attachment writ was seized on that writ, and that the plaintiff had never returned the same to the defendant.   It is difficult to ascertain on what principle the mere attachment of personal property, can amount to the payment of the debt on which it was attached.   It is a mere inchoate lien.   It is for the time being *in custodia legis*.   The sheriff or other officer who levies the writ acquires a special property in the goods, for the purpose of securing them to answer unto a future demand, which may or may not be perfected against it, but for no other purpose, ( *Watson* v. *Todd*, 5 Mass. 271,) while the debtor retains his general property in the goods attached, which is not affected or changed until after a levy and sale on execution, ( *Blake* v. *Shaw*, 7 do. 505;) and he may, if he can obtain peaceable possession of them, sell and deliver the same to a purchaser, ( *Fettyplace* v. *Dutch*, 13 Pick. 388,) while the attaching creditor acquires no property in the goods whatever; ( *Ladd* v. *North*, 2 Mass. 514; *Perley* v. *Foster*, 9 do. 112;) nor does the creditor thereby acquire any right to the money to be derived from a sale of the attached property.   For the duty of the attaching officer is to keep the goods, not to sell them, and if he is ever authorized to sell, it must be in pursuance of some future order or process of the Court, made in pursuance of law.   Whether any such order or process has been made or issued by such Court in Missouri—whether in fact, by the laws of Missouri, the attached property is to be specifically sold to satisfy the judgment in the suit, or whether there, as in many other states, the attachment is simply to secure the appearance of

the party, and judgment is rendered generally against the defendant, and to be satisfied out of his general effects, does not appear by this plea. If the lien of the plaintiff was perfected—if the plaintiff has the right and the power to sell the attached property on execution to satisfy that judgment, it was the duty of the defendant to have shown it, to bring the case within the principles applicable to the case of the levy of an execution, in which the execution creditor has a present unconditional right and power to have the property sold, and a present right to the money derivable from the sale, and these facts not appearing cannot be presumed to exist.

Whether a plea might not be drawn which would abate a suit founded on a judgment in attachment, till the goods attached were legally disposed of, is a question not now before the Court. The attachment in this case is not pleaded in abatement, nor as a temporary bar to this suit, but as a bar to any suit at any time, (1 Chitty's Pl. 481, 502,) as a full, perfect and absolute discharge of the judgment. And the real question is, whether the mere levy of an attachment, of itself, without more, can amount to a payment. Whether a payment can arise from a transaction in which the debtor still retains the full ownership of the goods, and the creditor acquires no present interest, either in the property out of which the payment is said to issue, or in the proceeds of it. The statement of the proposition carries with it its own refutation. To call this a payment, is to make words important, things of no consequence.

It is often said, that the levy of a *fieri facias* execution on goods sufficient to satisfy it, is a payment *pro tanto*, or in other words, suspends the right of action or of execution till the goods are disposed of. But I am not aware of any decision, which shows in what way the defence must be set up, nor the precise facts necessary to be averred in a plea to a suit on the judgment. But from the fact that all the cases show that it is a temporary defence only, an answer to a particular suit, and for a particular time, and not a bar to a suit generally, it comes clearly within the principle of

a plea in abatement, and not of a plea in bar, and as such, ought probably to be pleaded.

But what facts are essential to the validity of the plea in whatever way pleaded? The mere levy of an attachment on goods, cannot of itself constitute a payment of the debt. This cannot be said even of the levy of an execution (*Saccer* v. *Walker's Executors*, 5 Gill. & Johns. 102, 109; *Green* v. *Burke*, 23 Wend. 490,) a case much stronger than the instance of attachment, in which we have seen the debtor retain his property in the goods, while in the case of a levy of an execution, the lien being a perfect one, it is said that by this "lawful seizure, the debtor has lost his property in the goods;" (*Ladd v. Blunt*, 4 Mass. 402;) so that, admitting the seizure on attachment to be analagous to a seizure on execution, it does not make a payment, but merely suspends the right to sue; the principle is suspension, not payment. Of this, although there is a great want of precision in the books, in reference to this mode of payment, *quasi* payment, and payment *pro tanto*, an attentive examination of the cases will clearly demonstrate. Whether, then, at the time this suit was commenced, and to which time the plea must refer, the seizure of these goods should be held to suspend our right of action on the judgment, must depend upon whether they were still held in lawful custody, subject to the satisfaction of that judgment. For if the lawful seizure, in the first instance, originated the bar or suspension of the right to sue, then the continuance of such bar or suspension must depend on the continuance of such lawful seizure. If from any legal cause the goods are no longer answerable in the suit in which they were attached, there is no longer any just reason for a further prohibition against seeking other satisfaction of such judgment. The suspension of our right must then depend upon the fact, that at the time this suit was brought, the goods attached were still answerable in the former suit. The defendant who insists on this suspension, must, according to every principle of pleading, aver in his plea every fact necessary to show that our right to sue was in fact suspended, to wit: that at the time this suit

Pearl *v.* Wellman *et al.*

was instituted, the goods attached were still legally held subject to the former judgment.

The counsel for the defendant seemed fully aware of this difficulty, and attempted to meet the difficulty by alleging, that the "plaintiff hath never returned the goods to the defendant." But because the plaintiff hath never returned the goods, does it follow that they remain still undisposed of and legally held subject to the judgment? It does not appear from the plea that they were lawfully attached—that they were ever legally subject to attachment. But admitting they were once in lawful custody, might not the officer in whose custody the goods were, and who alone could return them, have returned them, even if the plaintiff failed to do so? May not the property, though attached, have been taken from the custody of the attaching officer on a prior lien? May not the vendor, finding them attached, have exercised his undoubted right of stoppage in *transitu?* May not the property have perished by natural decay, without the fault of any one, and without the existence of any law authorizing the sale of it, to prevent such an occurrence—and the Court cannot know what the law of Missouri is on this subject? May not the defendant even have obtained peaceable possession of the goods, and used them for his own benefit? Yet if any one of these things, or of many other suppositions which might be made, is true, then at the time this suit was commenced, the goods were not held subject to the judgment, the judgment was not paid, and there could be no pretence that our right of action was suspended. Every one of these facts may be true, and the facts stated in the defendant's plea be true also. As it is the part of the defendant to aver all facts which constitute his defence, these facts, and all other facts inconsistent with it, should be negatived in his plea. This should be done, not by a negative averment, denying every supposable fact inconsistent with his defence, but by an affirmative averment, that at the time this suit was brought, the goods were still undisposed of, and held subject to the judgment. This averment would negative every fact inconsistent with the main fact

constituting the defence—that our right of action was still suspended. It is an averment required on every principle of pleading, and the only direct authority I have been able to find on this point, sustains the necessity of making it. *Mountney* v. *Andrews*, Croke Eliz. 237. That was on *scire facias* to revive a judgment. The plea was, in substance, that the plaintiff had, by a former execution, levied upon certain goods and chattels of the defendant, and still detained them. If the fact that the detention of the goods constituted a necessary part of the defence in that case, it would be equally so in this. The principle of the two cases cannot well be distinguished.

So much then as to the point of the suspension of our right of action. If we are correct, then the plea in question is substantially defective, in not showing that the goods were still undisposed of, and held subject to the original judgment.

If a payment in fact is relied on, then it would be necessary for the same reason, and to show a complete bar, to aver that the goods had in fact been disposed of on that judgment, and that the proceeds were sufficient to pay the same. For whatever may be the value of the goods attached, the extent of the payment must depend, not on that value, but on the amount brought at the sale; and no payment in fact could possibly be made, till the goods were thus disposed of. For then only, could the creditor acquire a present right to money derivable from the sale, and in which alone the payment could be made. If, then, a payment in fact is insisted on, then the plea is substantially defective, in not averring the sale of the property and the amount of it.

There are several other minor, but equally fatal objections to the plea.

1. It is in form a plea to the whole declaration, but in fact answers but a part of it. One cannot but observe the studied language of the plea, to evade a full and direct reply to the plaintiffs' demand. The plaintiffs sue on a jungment, for $851·55 debt, and $500 damages. The substance of a plea of payment, whether general or special,

consists in a substantive averment, that the debt and damages in the plaintiffs' declaration mentioned, are fully paid. Instead of this, however, the defendant simply avers a levy by attachment, on property equal in value to the sum specified in the writ, and which sum, as shown by the plea, was $813·28, that being the only sum specified therein. If the defendant, in his plea, intended to aver that the value of the attached property was equal to the "sum specified" in the writ, together with the interest and costs of suit, it would have been easy to make that averment, either by inserting those words in his plea, or by averring—what would be the usual averment for such a case—that the property was of value equal to the judgment sued on—by pleading to the demand now sued on the judgment, and not to the writ which was merely preliminary and incidental to that demand. The plea is hence equivocal and evasive; in form, a plea to the whole action, it is, in substance, a plea to but part; and to escape detection, the pleader has employed doubtful expressions, and given to the plea a vague and unusual form. It is a proper case for the application of the rule, that equivocal language shall always be taken most strongly against the pleader.

2. All the cases show, that where an attachment or levy of execution on property is relied on as a defence, the averment must be that the property thus seized must *be sufficient* to satisfy the debt. (23 Wend. 490, and the numerous cases there cited.) Now, in this case there is no such averment. The only averment is, that the property was *in value* equal to the sum specified in the writ. The value of property has little to do with the amount it will bring on sale. If there has been a payment in this case, it is because property enough to pay the debt on sale has been seized and detained; and if the property seized, whatever its value, was insufficient for this purpose, then a payment thereby was impossible. The business of making out the payment devolves on the defendant. That the property was in value only *equal to the debt*, is the strongest possible evidence that it would not have sold on execution for a sum equal to the debt. As the debt was to be paid by a sale, the averment should have

shown, that the property was sufficient to pay the debt in due course of law, by some apt term. The evasiveness and insufficiency of the plea in this particular is hence another and sufficient ground for sustaining the demurrer to it.

The Opinion of the Court was delivered by

THOMAS, J. This was an action of debt commenced in the Tazewell Circuit Court, by the appellees against the appellant, on a judgment of the Court of Common Pleas, of the county of St. Louis, in the State of Missouri.

The defendant pleaded,

I. *Nul tiel record,* to which the plaintiffs, by their attorney, say: "plaintiffs here bring record, &c. Jones."

II. Payment, to which there was no replication.

III. That said judgment was recovered (if at all) in a certain action by attachment, instituted in the St. Louis Court of Common Pleas, by the appellees against the appellant, in which said plaintiffs caused to be issued out of the office of the clerk of said Court, a certain writ of attachment, dated &c., directed to the sheriff of St. Louis county aforesaid, commanding him, among other things, to attach the said defendant, by all and singular his lands and tenements, goods and chattels, moneys, credits and effects, or so much thereof as should be sufficient to secure the sum of $813·28, with interest and costs of suit, in whose hands the same might be, in his bailiwick; and that under and by virtue of said writ, said sheriff did attach and levy upon certain property of said defendant, to wit, &c. and that said property so seized and levied upon as aforesaid, was then and there worth the full amount of the said sum specified in said writ of attachment; and that the same has not by said plaintiffs been restored to said defendant, and that said judgment in said declaration mentioned, was, if any such there be, recovered in said action, and the same is, in manner aforesaid, satisfied, &c.

To this plea the plaintiffs demurred generally. Their demurrer was sustained by the Court; and thereupon a trial being had by the Court, a judgment was rendered for the

plaintiffs for $851·55 debt, and $54·86 damages, together with their costs.

That judgment the defendant brings into this Court by appeal, and asks its reversal for the following grounds assigned by him for error, to wit:

1. That the Circuit Court sustained the demurrer to the third plea.

2. That the record of the judgment of the St. Louis Court of Common Pleas was admitted in evidence, the same not having been properly authenticated.

3. That the Court rendered judgment against the defendant upon the evidence produced.

4. That judgment was rendered upon insufficient pleadings, there being no answer to defendant's first and second pleas.

The question involved in the first assignment of error is as to the validity of appellant's third plea, whether the facts therein alleged warranted its conclusion that the judgment sued on had been satisfied?

In support of the affirmation of this proposition, the appellant insists, that a seizure of goods on attachment stands on the same footing as if made by levy on execution, and consequently, that such seizure may be pleaded in bar of any suit upon a judgment rendered in such attachment. This position, however, is wholly untenable.

The difference in the operation of levies on execution and on attachment, is deducible, as a necessary result, from the difference in the nature and destined offices of the two writs. The one is final, the other mesne process; the one is "the life of the law," and operative to put the creditor in possession of the fruits of his judgment, the other as a mere means of giving the Court jurisdiction to proceed to judgment against the debtor or his property.

A levy on execution vests in the officer making it, a special property in the goods seized, for the purpose of a sale thereof, for the benefit of the judgment creditor, while it confers upon such creditor, a present unconditional right to have such sale made, and to have the money derivable there-

from. By such levy, therefore, the plaintiff acquires a perfect lien. Hence the doctrine established by numerous decisions and recognized by this Court, in *Gregory* v. *Stark,* 3 Scam. 612, that the levy of a *fi. fa.* on personal property will, until disposed of, suspend the plaintiff's right to proceed further on his judgment, either by prosecuting another suit, or suing out another execution, and that such levy will consequently be, for such purpose, considered as a satisfaction of the judgment.

But such cannot be the consequence of a mere seizure of goods on attachment. The attaching creditor thereby merely acquires an imperfect, inchoate lien, which, when followed by a judgment, will have relation back to the date of the levy. *Martin* v. *Dryden,* 1 Gilman, 213. The goods attached, for the time being, are *in custodia legis,* the officer levying the writ having a special property in them for the purpose of securing them to answer to a further demand, which may or may not be perfected against them, but for no other purpose. *Watson* v. *Todd,* 5 Mass. 271. While the debtor retains his general property in such goods, which is not affected or changed until after a levy and sale on execution. *Blake* v. *Shaw,* 7 do. 505. And he may, if he can obtain peaceable possession thereof, sell and deliver them to the purchaser, as against every one except the attaching creditor. *Fettyplace* v. *Dutch,* 13 Pick. 388. And the attaching creditor has no property whatever in the goods. *Ladd* v. *North,* 2 Mass. 514; *Perley* v. *Foster,* 9 do. 112. Nor does the creditor thereby acquire any right to the money to be derived from a sale of the attached property, unless such sale be authorized by some further order or process of the Court, made in pursuance of law. Until then, the duty of the officer is to keep the goods, not to sell them.

If the seizure of goods on attachment operated like a levy on execution, its effect would be to defeat the very object of its use, the rendition of a judgment against the debtor, or his goods. While relied upon as giving the Court jurisdiction for the purpose of subjecting the goods attached to sale for the payment of the debt sued upon, the seizure of the goods might as a consequence of such doctrine be pleaded

Pearl *v.* Wellman *et al.*

as a payment of that very debt, and thus be made to defeat a judgment therefor. The statement of the proposition carries with it its own refutation.

This Court, at its present term, has held that the pendency of a prior suit by attachment, on which goods have been seized, may not even be pleaded in abatement of a subsequent suit *in personam,* against the debtor for the same debt. *Branigan* v. *Rose, ante,* 123.

But the doctrine contended for is unsound for another reason. The reason of the doctrine established by the Courts, that a levy on personal goods, by virtue of an execution, is operative to stay further proceedings, by suit or execution, until such levy is disposed of, is, that the further aid of legal process is unnecessary for the purpose of enforcing the rights of the creditor, until the operation of that already issued in his behalf shall have been exhausted. That to permit further process to issue under such circumstances, would be to make the process of the law not beneficial to the creditor, but vexatious and oppressive to the debtor. Consequently, a defence based upon the levy of an execution, must show it to be a subsisting levy when pleaded. Such is the doctrine held in the case of *Mountney* v. *Andrews,* Cro. Eliz. 237, to which all the cases on this subject go back. In that case, the language of the plea was, that "the sheriff hath taken divers sheep and yet detaineth them." And in the case of *Gregory* v. *Stark,* 3 Scam. 612, the validity of such a defence is admitted in cases where the levy is still subsisting, and the result of a sale has not proved the insufficiency of the property levied on to satisfy the judgment.

The mere allegation of a seizure of goods on attachment, shows no subsisting lien upon such goods when pleaded. The special property of the officer levying the writ may have been divested, and the plaintiff's inchoate lien defeated by many means after the seizure of the goods, and if so, there can be no good ground for refusing to the plaintiff the further aid of the Courts and their process to enable him to enforce his rights; therefore, a defendant relying upon a seizure of his goods on attachment, as a ground of defeating a suit upon the judgment rendered upon such attachment,

should, in order to bring himself within the rule above stated, show by his plea, that such goods are specifically bound by law for the satisfaction of such judgment, and still held for that purpose, by seizure on execution or otherwise.

Upon the exhibition of such a state of facts, the defendant might, in such case, well insist that the plaintiff's right of proceeding further against him should be suspended, until the exhaustion of the remedy already progressed beyond its mere incipiency, by the seizure and detention of his goods. He would thus show a satisfaction *sub modo;* a temporary bar to judgment or execution whose extent would be limited by the result, ripening into a full and perfect satisfaction of the judgment, if the proceeds arising from the sale of the goods attached should be sufficient in amount for that purpose: if not, furnishing a satisfaction *pro tanto,* and leaving the plaintiff at liberty to perfect his remedy by further proceedings. Further than this we cannot go, but in this connection adopt the language of the Supreme Court of New York in the case of *Green* v. *Burke,* 23 Wend. 490, that "there are so many ways invented by which goods may be got from the sheriff; sometimes by fraudulent claims, sometimes by prior liens, and even by his own negligence; that it behoves the Courts to look into the rule now urged upon us as working by a sort of magic, to cut a man off from his debt without the show or pretence of satisfaction."

Tested by these principles, the plea under consideration will be found wholly defective in not showing, that by the laws of Missouri, the attached property was specifically liable to be sold for the satisfaction of the judgment to be obtained on the attachment, and that they were, when the plea was filed, still legally held for that purpose.

For anything that appears from the plea, the process of attachment may be used in Missouri simply for the purpose of securing the appearance of the defendant; but if not, still the plea does show a seizure by the sheriff, and he alone, and not the plaintiffs, had the custody of the goods, and could control their possession. Consequently, the allegation that the said goods have not been restored by the plaintiffs to the defendant does not exclude the conclusion that the sheriff

may have done so, or that said goods, by some other means, had been discharged from the operation of the plaintiffs' lien, if they had any.

The Circuit Court did not err in holding the authentication of the record sued on sufficient, and admitting it in evidence, the defendant's objection to the contrary notwithstanding, as alleged by the second error assigned. That record, as appears by reference to the bill of exceptions taken on the trial, was proved by the attestation of the clerk of the Court rendering the judgment, and the seal of the Court annexed, together with the certificate of the sole Judge of that Court that the said certificate was made by the proper officer, that said attestation was in due form, &c. This was in strict compliance with the requisition of the Act of Congress in such case made and provided.

The ground on which the appellant bases his third assignment of error, to wit, that the evidence produced on the trial was insufficient to warrant the judgment rendered upon it, might, if true in point of fact, have constituted a sufficient reason for the granting of a new trial in the Court below; but, in the shape in which it is now sought to be presented, is not examinable in this Court. To have made it so, a motion should have been made in the Circuit Court for a new trial, and then such motion being overruled, the action of the Court thereon might have been assigned for error. *Barnes* v. *Barber*, 1 Gilman, 401.

But this assignment, if inquirable into here, is not sustained by the record. The bill of exceptions does not profess to exhibit all the evidence heard on the trial, but nevertheless does show enough to warrant the rendition of the judgment of the Court now complained of.

The only question remaining to be disposed of, is one of pleading, and it is perhaps to be regretted, that in determining it, as we must do, upon long established and well settled principles of law, the benefit growing out of the reversal of a judgment, appearing from the evidence in the cause to have a good and sufficient foundation in law and fact, should be made to enure to a defendant who is not shown by the record to have had any valid and sufficient

defence to the suit against him, if put upon his proof of such defence by the pleading of his adversary. But our province is to expound the law as we find it, and not to give to it an attribute of flexibility which it does not possess, for the purpose of varying results. Then, without an entire departure from the line of our duty, we cannot say otherwise than that one of the defects in pleading complained of in the fourth assignment of error does exist, and is such as imperatively to require a reversal of the judgment.

This defect is not found in the replication to defendant's plea of *nul tiel record.* That is substantially sufficient. To such a plea the plaintiff should reply, "there is such a record," and conclude his replication *"prout patet per recordum."* 6 Com. Dig. title, *"Pleader,"* 378; 1 Chitty's Pl. 619. The omission of such conclusion is cured by verdict, and will not affect the judgment. Rev. Stat., Ch. V. § 9; 1 Chitty's Pl. 723.

But the defendant's plea of payment is wholly unanswered, and this defect is entirely incurable by any intendment of law.

It is not the case of a defect in matter of form, which is cured by verdict. 6 Com. Dig. 141. Nor of a party attempting to take advantage of his own defective pleading, which he may not be permitted to do. Ib.; *Waters* v. *Simpson,* 2 Gilm. 577. Nor does it prevent the question sometimes assuming a doubtful aspect, as to the extent to which defects in an insufficient bar or replication will be cured by verdict; but the defendant interposes a plea which completely answering the declaration entitles him, if successful on it, to judgment in bar of the action. *Dana* v. *Bryant,* 1 Gilm. 104. As to this plea, there was no controversy. The matter set up by it not being denied, the defendant was entitled to judgment on it, and the Court consequently erred, as well in proceeding to the trial of the remaining issue in the cause, as in rendering judgment against the defendant. For this error the judgment will be reversed with costs, and the cause remanded to the Circuit Court of Tazewell county for further proceedings on a *venire de novo.*

*Judgment reversed.*